# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff - Appellant,

v.

KEENAN DANCELL VERNER,

        Defendant - Appellee.

No. 15-5042
D.C. No. 4:15-CR-00039-CVE-1
(N.D. Okla.)

## ORDER AND JUDGMENT[*]

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

The government obtained an indictment charging Keenan Verner with possessing with intent to distribute more than fifty grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii). Verner filed a motion to suppress, asserting the evidence supporting the charge was obtained as a result of an illegal arrest. The district court granted Verner's motion, concluding Verner's seizure amounted to an arrest rather than an investigative detention and the arrest

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

was not supported by probable cause.  The government appeals, contending

Verner failed to establish a nexus between the illegal arrest and the suppressed

evidence.  We conclude the government forfeited its nexus argument when it

failed to timely raise it in the district court.  Thus, exercising jurisdiction

pursuant to 18 U.S.C. § 3731, this court **affirms** the district court's order of

suppression.

　　　　We draw the background from the district court's factual findings, viewing

the evidence in the light most favorable to Verner, the prevailing party below.

*United States v. Hudson*, 210 F.3d 1184, 1190 (10th Cir. 2000).  Tulsa Police

Department Officers William MacKenzie and Tim Wilson went to a Flying J

Travel Plaza in an unmarked truck to investigate a possible drug transaction.  A

confidential informant told William[1] a black male driving a Jeep would be selling

methamphetamine at that location.  William and Wilson observed a Jeep occupied

by a black male driver and a white female passenger in the Flying J's south

parking lot.  The black male, later identified as Verner, got out of the Jeep and

walked to a portion of the parking lot designated for commercial vehicles.  The

officers drove to that location and observed Verner sitting in the passenger seat of

a white truck occupied by a white male driver.  Although the officers believed

---

[1]Both William MacKenzie and his brother Andrew MacKenzie are police officers and both are involved in this case.  For that reason, this opinion refers to both officers by their first names.

-2-

they were witnessing a drug transaction, Wilson testified surveillance of the white truck was difficult due to the presence of commercial vehicles. The officers did not see any drugs or money change hands.

After a few minutes, Verner exited the white truck and walked over to a Kia. The Kia was driven by an individual later identified as Kenneth Taylor. The officers observed Verner enter the Kia and watched as Taylor drove the Kia to a business across the street. Verner went inside the business and returned to the Kia. In the meantime, the officers had moved the unmarked truck to a location which allowed them to observe Verner and Taylor interacting. The Kia returned to the Flying J about five minutes later. At that point, William asked Officers Andrew MacKenzie and Tyler Turnbough to stop the Kia in the Flying J parking lot.

The initial stop of the Kia was recorded on the dash camera of Andrew's police vehicle. The video shows three police officers in uniform approach the Kia with firearms displayed and, at times, pointed at the Kia. Five police officers, not including William and Wilson, were present. Officers Ian Adair, Brad Blackwell, and Adam Miller arrived in a separate patrol car and served as backup for the stop. Andrew's firearm, though visible, was not pointed directly at the Kia. Turnbough's firearm, on the other hand, was pointed at the Kia as he approached the vehicle. The officers directed Verner and Taylor to show their hands and slowly step out of the Kia. Taylor exited the Kia first; he was immediately placed

in handcuffs by Andrew.  Verner briefly pulled his hands down to open the

passenger side door and then stepped out of the Kia.  Verner was immediately

placed in handcuffs by Turnbough.  Turnbough conducted a brief patdown of

Verner; he did not find any weapons or illegal drugs.  Both Andrew and

Turnbough testified they detected a strong odor of marijuana coming from the

Kia.[2]  After Verner and Taylor were handcuffed, Andrew ran a records check and

found that both men had outstanding misdemeanor warrants.  Verner and Taylor

were formally arrested based on the outstanding warrants.  A canine unit was

called to the scene of the detention; the canine alerted to the presence of illegal

drugs.  Turnbough searched Verner more thoroughly after the formal arrest and

found two baggies containing more than fifty grams of methamphetamine.  Verner

told Turnbough, "I'm on federal paper" and "I'm going [away] for a long time."

Turnbough testified Verner made the statements voluntarily and not in response to

interrogation.

Verner filed a motion to suppress the evidence obtained as a result of his

detention, arguing the stop of the Kia by the officers was inconsistent with an

investigative detention and was, instead, a de facto arrest.  *See United States v.*

*Mosley*, 743 F.3d 1317, 1329 (10th Cir. 2014) (holding that absent a reasonable

---

[2]As explained more fully below, the district court did not make a finding
regarding the credibility of this testimony because such a finding was not
necessary to resolve Verner's motion to suppress, as that motion was litigated by
the parties.

belief it is necessary for police protection, pointing guns at a suspect will generally "elevate a seizure to an 'arrest'").  That is, Verner claimed the display of force at the inception of the encounter (i.e., presence of five uniformed officers in two marked cars; exhibition of weapons, at least one of which was pointed at the Kia; and immediate use of handcuffs) mandated the conclusion he was placed under arrest before any of the incriminating evidence relating to the drug charge was discovered.  He further asserted his arrest was not supported by probable cause.  Finally, to round out his syllogism, Verner contended none of the evidence obtained during the illegal arrest (most notably the methamphetamine and the statements made to Turnbough) would have been discovered but for the illegal arrest.

In response, the government asserted Verner was not placed under arrest until the discovery of the outstanding misdemeanor warrant.  It posited the following time line of Verner's detention: (1) the detention was a *Terry* stop until officers approached the Kia and detected the smell of marijuana; (2) the smell of marijuana gave officers probable cause to further detain Verner and to search the Kia; (3) during that extended detention, officers discovered the existence of an outstanding warrant, providing probable cause for a formal arrest; and (4) only after the formal arrest, and thus pursuant to a proper search incident to arrest, did officers search Verner and find the methamphetamine on his person.  Because, under this theory, Verner was never under arrest until after officers had probable

cause for such an arrest, the government argued Verner's suppression motion necessarily failed.

To be clear then, as the above summary of the parties' litigation positions demonstrates, Verner's suppression motion was presented to the district court for resolution of only one question: was Verner placed under de facto arrest immediately upon his detention by the TPD officers? That is, at no point did Verner argue he was entitled to suppression if his detention was a valid *Terry* stop prior to the discovery of his outstanding warrant. Likewise, and of particular importance for the resolution of this appeal, the government never offered any argument that Verner was not entitled to suppression even if he was under arrest for the entirety of his detention.

The district court granted Verner's motion to suppress. It concluded the government was correct in asserting reasonable suspicion existed to support an investigatory detention. Nevertheless, the district court concluded the existence of reasonable suspicion was irrelevant because the encounter between Verner and the officers was an arrest at its inception. The district court further concluded that Verner's arrest was not supported by probable cause and, therefore, Verner "was unlawfully detained from the inception of the stop." Finally, because the government had not disputed the existence of a nexus between the illegality at issue (i.e., an arrest not supported by probable cause) and the evidence Verner sought to exclude, the district court concluded suppression was appropriate.

In response to the district court's grant of Verner's motion to suppress, the government filed a motion for reconsideration. In that motion, the government argued for the first time that Verner was not entitled to suppression because there existed no nexus between his illegal arrest and the evidence he sought to suppress. The government's theory as to the lack of a nexus was as follows:

> [Verner] . . . already had been lawfully seized in a valid traffic stop based on reasonable suspicion and would not have been allowed to leave the scene. The officers could lawfully approach the car during the course of that justified traffic stop and they could lawfully detect the scent of marijuana emanating from the car. Neither the stop nor the discovery of the scent of marijuana was the fruit of the unlawful arrest. The scent of marijuana established probable cause to arrest defendant and search him and the car. He was not searched until after the scent of marijuana was discovered. Thus, suppression is unwarranted.

Implicitly recognizing the district court did not make any findings relevant to the presence of the smell of marijuana in the Kia, namely because such findings were unnecessary to resolve the suppression motion as presented by the parties, the government nevertheless asserted reconsideration was appropriate because Verner never disputed the officers' testimony in that regard. The government sought to excuse its failure to previously raise the issue by noting that, as to the merits, it has no burden in the suppression context until a defendant first demonstrates a factual nexus between the illegality and the evidence sought to be suppressed. *See United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000).

The district court denied the government's motion for reconsideration. It first recognized that motions for reconsideration are proper in the criminal context. *See United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014) ("Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them."). A district court may grant such a motion if it "has misapprehended the facts, a party's position, or the law." *Id.* "A motion to reconsider should not be used to . . . advance arguments that could have been raised earlier." *Id.* Applying this paradigm, the district court concluded the government's motion failed for two independent, and equally sufficient, reasons. First, the district court concluded the government was wrong in arguing "the police officers' belief that they detected the scent of marijuana" broke the causal chain between the illegal arrest and the discovery of the methamphetamine. Second, the district court concluded the government's nexus argument was untimely[3]:

---

[3]In its reply brief, the government asserts language relating to timeliness in the district court's order denying reconsideration only applies to the issue of attenuation. This assertion is unconvincing. The district court perceived in the government's motion for reconsideration two possible arguments: (1) a nexus argument and (2) an attenuation argument. After rejecting each of these arguments on the merits, the district court concluded, in the alternative, that "it would be unfair to [Verner] to allow the government to revise its theory of the case after reviewing the . . . suppression order" and the "arguments" raised by the government could have been raised earlier in the proceedings. Furthermore, the district court explicitly labeled the government's nexus argument as "a new theory." There is simply no doubt the district court's timeliness argument applied

(continued...)

The Court also notes that it would be unfair to defendant to allow the government to revise its theory of the case after reviewing the Court's suppression order. The arguments now advanced by the government could have been raised in its response to defendant's motion to suppress or at the suppression hearing, and this is not a situation in which the Court "mistakenly overlooked" an argument that should have been considered in a prior ruling.

The government asserts the district court erred in concluding a nexus existed between Verner's illegal arrest and the evidence he asked to be suppressed. This court will address that issue only if it was properly preserved in the district court. "Absent compelling reasons, [this court will] not consider arguments that were not presented to the district court." *Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994). This rule applies in criminal as well as civil appeals. *See United States v. Eastteam*, 426 F.3d 1301, 1303 n.2 (10th Cir. 2005).

The government argues the nexus issue it seeks to assert on appeal is preserved despite its failure to brief or argue it during the litigation of the suppression motion because the issue was addressed and resolved on the merits by the district court sua sponte. *See United States v. Williams*, 504 U.S. 36, 41 (1992) (holding appellate courts can reach issues that were either "pressed" by the appellant before, or "passed upon" by, the lower court); *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003) ("[W]hen the district

---

[3](...continued)
independently to each of the two potential "new theories" set forth in the government's motion for reconsideration.

court *sua sponte* raises and explicitly resolves an issue of law on the merits, the appellant may challenge that ruling on appeal on the ground addressed by the district court even if he failed to raise the issue in district court.").  In advancing this argument, the government relies on the following language from the district court's order denying suppression: "There is no dispute that drugs found on [Verner's] person would not have been discovered but for [his] arrest . . . .  The Court finds that [Verner] has established the required nexus between the illegal conduct and evidence to be excluded, and the evidence seized from [his] person is subject to suppression under the exclusionary rule."

The government errs in asserting the district court "passed upon" the particular issue it seeks to raise on appeal.  To "pass upon" an issue, a court must apply the relevant law to the relevant facts.  *See Hernandez-Rodriguez*, 352 F.3d at 1328.  As noted at length above, however, the nexus issue advanced by the government on appeal (i.e., the presence of the smell of marijuana as the officers approached the Kia broke the causal chain between the illegal arrest and the discovery of the methamphetamine) was not presented to the district court in the government's opposition to Verner's suppression motion.  Nor did the district court recognize the possibility such an argument could be made by the government and decide the issue sua sponte.  Instead, in Verner's suppression motion, consistent with his obligation to demonstrate a nexus between the

-10-

constitutional violation and the evidence he sought to suppress, he argued as

follows:

> In this case, the police initiated a traffic stop of the vehicle in
> which Mr. Verner was traveling and then put him under arrest at
> gunpoint.  There is no evidence suggesting the police knew of the
> warrant for Mr. Verner's arrest before he was stopped and arrested.
> The police arrested Mr. Verner at the beginning of the interaction, in
> the absence of probable cause.  The police only learned of Mr.
> Verner's identity (and that there was a warrant relating to him) due
> to an interrogation that happened during a detention that was not
> supported by probable cause.  As the unlawful arrest and
> interrogation is the basis for the unlawful arrest and subsequent
> search, all evidence yielded from the search is subject to suppression.

R. Vol. 1, at 23.  The government did not respond to this argument, and most

certainly did not ask the district court to make relevant factual findings about the

purported smell of marijuana necessary to resolve the nexus theory it now seeks

to have reviewed by this court on appeal.  Thus, the only issue the district court

"passed upon" was whether the narrow set of facts identified by Verner, and not

contested by the government, satisfied the nexus requirement set out in this

court's precedents.

In essence, the government asks this court to conclude that when the

district court (1) noted Verner's nexus argument, (2) recognized the government

did not dispute that argument and, therefore, (3) concluded the nexus requirement

was satisfied, the district court implicitly considered and rejected each and every

hypothetical argument against the existence of a nexus in this case.  Such a

conclusion is completely at odds with this court's preservation precedents.

> We have consistently rejected the argument that raising a related
> theory below is sufficient to preserve an issue for appeal.  Changing
> to a new theory on appeal that falls under the same general category
> as an argument presented at trial or discussing a theory only in a
> vague and ambiguous way below is not adequate to preserve issues
> for appeal.  Indeed, the Court of Appeals is not a second shot forum
> where secondary, back-up theories may be mounted for the first time.

*Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1314 n.4 (10th Cir. 1998)

(quotations, citations, and alteration omitted); *see also United States v. Abdenbi*,

361 F.3d 1282, 1288-89 (10th Cir. 2004) (refusing to consider on appeal specific

theories for suppression of evidence which were not raised in defendant's district

court motion to suppress).  Because the district court did not "pass upon" the

issue advanced by the government on appeal in its order granting suppression,

this segment of the government's preservation argument is without merit.

Alternatively, the government argues it preserved the nexus issue advanced

on appeal because it was raised and resolved by the district court in the ruling

denying the motion for reconsideration.  The problem for the government is that

the district court denied reconsideration on two independent grounds: (1) the

government's nexus argument failed, even assuming officers believed they

smelled marijuana when they approached the Kia; and (2) the argument was not a

proper basis for reconsideration because it was a "new theory" that could have,

and should have, been raised in response to Verner's motion to suppress.  It is

appropriate to reach the merits of the government's nexus argument only if the

district court abused its discretion in concluding the government's motion for

reconsideration was an unjustified attempt to raise an issue that could have been advanced earlier in the litigation.  *Christy*, 739 F.3d at 539 (concluding a "motion to reconsider should not be used to . . . advance arguments that could have been raised earlier" and reviewing the district court's disposition of a motion for reconsideration for abuse of discretion).

In asserting it was appropriate to raise its nexus argument for the first time in its motion for reconsideration, the government notes that this court's precedents place the initial burden on the party seeking suppression to satisfy the nexus requirement.  *See United States v. Ladeaux*, 454 F.3d 1107, 1111 (10th Cir. 2006) (holding a defendant must show there is a factual nexus between "the illegality and the challenged evidence," meaning the evidence the defendant seeks to exclude "would not have come to light *but for* the government's unconstitutional conduct" (quotations omitted)).  The government further asserts that because Verner did not so much as mention the existence of a nexus, the issue was not apparent until the district court issued its suppression order. *See* U.S. Opening Br. at 19 ("Notably, in the brief in support of his motion, Verner did not cite to, nor address, the but-for causation standard that would apply if he succeeded in showing some illegality. . . .  It was only after the district court ruled that the officers' display of firearms effectively elevated the investigative detention into an unlawful arrest that the question was squarely joined as to whether Verner had shown but-for causation . . . .").  The

-13-

government's argument in this regard is both factually and legally incorrect.  As the extensive quote from Verner's suppression motion set out above demonstrates, he did argue his illegal arrest was the but-for cause of the discovery of the evidence he sought to suppress.  *Supra* at 11 (quoting from R. Vol. 1, at 23). Furthermore, even as the nonmovant, the government is not entitled to sit back and ignore potential legal problems in a motion to suppress, only to later raise those issues in a motion for reconsideration.  *See Lebahn v. Owens*, 813 F.3d 1300, 1307-08 (10th Cir. 2016) (reaching the same conclusion in the civil context and holding "it is not the [district] court's job to comb the record in order to make the non-movant's arguments for him" (quotation omitted)).  The district court's determination that the nexus argument set out in the government's motion for reconsideration was a new theory that could have been raised earlier in the litigation of the suppression motion is, most certainly, not an abuse of discretion. Thus, there is no need to reach the district court's alternative merits decision.

For those reasons set out above, the United States District Court for the Northern District of Oklahoma is hereby **AFFIRMED**.[4]  The government's motion to file a supplemental appendix is **DENIED** as moot.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

---

[4]In a letter filed with this court pursuant to Fed. R. App. P. 28(j), the United States identifies the Supreme Court's recent opinion in *Utah v. Strieff*, 136 S. Ct. 2056 (2016), and asks this court to either take up the issue of attenuation in light of *Strieff* or leave the matter open on remand to the district court.  Given the explicit waiver of the issue in the government's appellate briefing, and in the absence of any reason to discard this court's general reluctance to take up waived issues, we decline this invitation.  *See* U.S. Reply Br. at 9 ("[W]e did not make an inevitable-discovery argument in the district court and we do not assert an inevitable-discovery argument here.").